JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Branht Dionicio Aguilera Rodriguez, et. al.

**(b)** County of Residence of First Listed Plaintiff: Davis County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Alec S. Bracken, P.O. Box 249, Midvale, UT 84047

## DEFENDANTS

U.S. Citizenship and Immigration Services

County of Residence of First Listed Defendant: Prince George
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❒ 1 U.S. Government Plaintiff
- ❒ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ❒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ❒ 110 Insurance
- ❒ 120 Marine
- ❒ 130 Miller Act
- ❒ 140 Negotiable Instrument
- ❒ 150 Recovery of Overpayment & Enforcement of Judgment
- ❒ 151 Medicare Act
- ❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ❒ 153 Recovery of Overpayment of Veteran's Benefits
- ❒ 160 Stockholders' Suits
- ❒ 190 Other Contract
- ❒ 195 Contract Product Liability
- ❒ 196 Franchise

**REAL PROPERTY**
- ❒ 210 Land Condemnation
- ❒ 220 Foreclosure
- ❒ 230 Rent Lease & Ejectment
- ❒ 240 Torts to Land
- ❒ 245 Tort Product Liability
- ❒ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ❒ 310 Airplane
- ❒ 315 Airplane Product Liability
- ❒ 320 Assault, Libel & Slander
- ❒ 330 Federal Employers' Liability
- ❒ 340 Marine
- ❒ 345 Marine Product Liability
- ❒ 350 Motor Vehicle
- ❒ 355 Motor Vehicle Product Liability
- ❒ 360 Other Personal Injury
- ❒ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ❒ 365 Personal Injury - Product Liability
- ❒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ❒ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ❒ 370 Other Fraud
- ❒ 371 Truth in Lending
- ❒ 380 Other Personal Property Damage
- ❒ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ❒ 440 Other Civil Rights
- ❒ 441 Voting
- ❒ 442 Employment
- ❒ 443 Housing/ Accommodations
- ❒ 445 Amer. w/Disabilities - Employment
- ❒ 446 Amer. w/Disabilities - Other
- ❒ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ❒ 463 Alien Detainee
- ❒ 510 Motions to Vacate Sentence
- ❒ 530 General
- ❒ 535 Death Penalty

Other:
- ❒ 540 Mandamus & Other
- ❒ 550 Civil Rights
- ❒ 555 Prison Condition
- ❒ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ❒ 625 Drug Related Seizure of Property 21 USC 881
- ❒ 690 Other

**LABOR**
- ❒ 710 Fair Labor Standards Act
- ❒ 720 Labor/Management Relations
- ❒ 740 Railway Labor Act
- ❒ 751 Family and Medical Leave Act
- ❒ 790 Other Labor Litigation
- ❒ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ❒ 462 Naturalization Application
- ❒ 465 Other Immigration Actions

**BANKRUPTCY**
- ❒ 422 Appeal 28 USC 158
- ❒ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ❒ 820 Copyrights
- ❒ 830 Patent
- ❒ 835 Patent - Abbreviated New Drug Application
- ❒ 840 Trademark

**SOCIAL SECURITY**
- ❒ 861 HIA (1395ff)
- ❒ 862 Black Lung (923)
- ❒ 863 DIWC/DIWW (405(g))
- ❒ 864 SSID Title XVI
- ❒ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ❒ 870 Taxes (U.S. Plaintiff or Defendant)
- ❒ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ❒ 375 False Claims Act
- ❒ 376 Qui Tam (31 USC 3729(a))
- ❒ 400 State Reapportionment
- ❒ 410 Antitrust
- ❒ 430 Banks and Banking
- ❒ 450 Commerce
- ❒ 460 Deportation
- ❒ 470 Racketeer Influenced and Corrupt Organizations
- ❒ 480 Consumer Credit
- ❒ 490 Cable/Sat TV
- ❒ 850 Securities/Commodities/ Exchange
- ❒ 890 Other Statutory Actions
- ❒ 891 Agricultural Acts
- ❒ 893 Environmental Matters
- ❒ 895 Freedom of Information Act
- ❒ 896 Arbitration
- ☒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ❒ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ❒ 1 Original Proceeding
- ❒ 2 Removed from State Court
- ❒ 3 Remanded from Appellate Court
- ❒ 4 Reinstated or Reopened
- ❒ 5 Transferred from Another District *(specify)*
- ❒ 6 Multidistrict Litigation - Transfer
- ❒ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
28 U.S.C. § 1361

Brief description of cause:
Plaitniffs allege an unreasonable delay in the bona fide determination on their I-918 U-visa application

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ❒ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE: 01/30/2026

SIGNATURE OF ATTORNEY OF RECORD: /S/ ALEC S. BRACKEN

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

ALEC S. BRACKEN (USBN 17178)
CONTIGO LAW
P.O. Box 249
Midvale, UT 84047
Phone: 801-980-9430
Email: alec@contigo.law
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| Branht Dionicio Aguilera Rodriguez,<br><br>Digna Suyapa Gutierrez Ordonez,<br><br>BAAG, a minor, by and through his parents,<br><br>Plaintiffs<br><br>v.<br><br>U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>USCIS VERMONT SERVICE CENTER;<br><br>CARRIE M. SELBY, in HER official capacity as Acting Director of Vermont Service Center of USCIS,<br><br>United States Immigration and Customs Enforcement<br><br>Defendants | Civil No.: 2:26-cv-79<br><br>COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF |

# TABLE OF CONTENTS


TABLE OF EXHIBITS……………………………………………………………………………..ii

INTRODUCTION…………………………………………………………………………………..1

JURISDICTION AND VENUE…...…………………………………………………………………..1

PARTIES…………………………………………………………………………………………...2

PLAINTIFFS…………………………………………………………………………………..2

DEFENDANTS………………………………………………………………………………..3

LEGAL FRAMEWORK..…………………………………………………………………………...4

The U Visa Program……………………………………………………………………...4

The Waiting List for U Visa Status…..……………………………………………………...5

Eligibility for Employment Authorization for U Visa Applicants …..………………………...7

Reasonableness of Delay………………………………………………………………………7

PROCEDURAL AND FACTUAL BACKGROUND ………...…………………...…………………9

REASONABLENESS FACTORS…………………………………………………………...11

The Delay Is Unreasonable Under Both the TRAC Framework and the Tenth Circuit's Qwest Reasonableness Factors…………………………………………………………………11

The TRAC Factors Weigh Decisively in Plaintiffs' Favor………………………………….12

The Tenth Circuit's Qwest Reasonableness Factors Confirm the Delay Is Unlawful……….14

Combined Analysis……………………………………………………………………...15

CAUSES OF ACTION……………………………………………………...……………15

COUNT ONE: ……………………………………………………………..…………15

COUNT TWO…………………………………………………………………………...16

RESERVATION OF RIGHTS…………………………………………………………………17

REQUEST FOR RELIEF………………………………………………………………………17

**TABLE OF EXHIBITS**

EXHIBIT 1…………………………………….…………………………….USCIS Filing Receipts

EXHIBIT 2…………………………………………...……….U-Visa Packet Submitted to USCIS

EXHIBIT 3……………………………………...……………………Previous Removal Documents

## INTRODUCTION

1. This is an action for declaratory, injunctive, and mandamus relief to compel Defendants to perform their mandatory, nondiscretionary duty to adjudicate Plaintiffs' pending Form I-918, Petition for U Nonimmigrant Status, and to issue a bona fide determination consistent with the Immigration and Nationality Act ("INA"), implementing regulations, and binding USCIS policy.

2. Plaintiff Brandht Aguilar Rodriguez is a victim of qualifying criminal activity who cooperated with law enforcement and timely filed a complete and bona fide U visa petition with U.S. Citizenship and Immigration Services ("USCIS"). Exs. 1 and 2. Despite the passage of a year, Defendants have failed to make a bona fide determination or otherwise meaningfully adjudicate Plaintiffs' petition.

3. Congress created the U visa to strengthen law enforcement's ability to investigate and prosecute serious crimes while providing humanitarian protection to immigrant victims. To effectuate that purpose, USCIS regulations and policy require the agency to promptly review U visa petitions and determine whether they are bona fide.

4. A favorable bona fide determination entitles U visa petitioners to critical interim protections, including deferred action and eligibility for employment authorization, while awaiting final adjudication under the statutory cap. Defendants' prolonged inaction deprives Plaintiffs of these protections and undermines the purpose of the U visa statute.

5. Defendants' failure to act constitutes agency action unlawfully withheld or unreasonably delayed under the APA, 5 U.S.C. §§ 555(b) and 706(1), and warrants relief under the Mandamus Act, 28 U.S.C. § 1361. This failure is rendered especially unreasonable where another component of the same parent agency, DHS, is simultaneously taking affirmative steps to remove Plaintiffs from the United States. USCIS and ICE are both subordinate agencies within DHS, and DHS may not avoid its

statutory obligations by allowing one component to withhold adjudication of a pending benefit application while another component insists on executing removal. ICE's insistence that Plaintiffs purchase airline tickets and depart within days, combined with USCIS's prolonged failure to adjudicate the pending Form I-918 and issue a bona fide determination, creates an internally inconsistent and legally untenable position that deprives Plaintiffs of congressionally authorized interim protections and constitutes agency action that is arbitrary, capricious, and unreasonably delayed within the meaning of the APA.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the INA and the APA.

7. This Court also has jurisdiction under 28 U.S.C. § 1361 to compel officers and agencies of the United States to perform duties owed to Plaintiffs. This Court has jurisdiction to enjoin Defendant United States Immigration and Customs Enforcement from executing Plaintiffs' removal order pursuant to 28 U.S.C. §§ 1331, 1361, and 5 U.S.C. § 702.

8. Sovereign immunity is waived under 5 U.S.C. § 702.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(e) because Defendants are agencies or officers of the United States acting in their official capacities, Plaintiffs reside in this District, and a substantial part of the events or omissions giving rise to the claims occurred here.

## PARTIES

### PLAINTIFFS

10. Plaintiff Branht Dionicio Aguilera Rodriguez is a noncitizen residing in Utah and the principal petitioner on a Form I-918, Petition for U Nonimmigrant Status, currently pending before USCIS. Exs. 1 and 2.

11. Plaintiff Digna Suyapa Gutierrez Ordonez is a noncitizen residing in Utah, the lawful spouse of Plaintiff Branht Dionicio Aguilera Rodriguez, and a derivative beneficiary of his pending Form I-918 U visa petition. *Id*.

12. Plaintiff BAAG is a minor noncitizen residing in Utah, the child of Plaintiff Branht Dionicio Aguilar Rodriguez, and a derivative beneficiary of his pending Form I-918 U visa petition. *Id*.

**DEFENDANTS**

13. Defendant U.S. Citizenship and Immigration Services is a component of the Department of Homeland Security ("DHS") and is responsible for adjudicating U visa petitions. USCIS is an "agency" within the meaning of 5 U.S.C. § 551(1).

14. Defendant USCIS Vermont Service Center is the component agency within USCIS that is responsible for adjudicating certain benefit applications, including petitions for U nonimmigrant status and all related applications filed by individuals who live in the state of Utah. *See I-918, Petition for U Nonimmigrant Status: Where to File*, USCIS (Jan. 22, 2026) https://www.uscis.gov/I-918. USCIS Vermont Service Center is an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).

15. Defendant Carrie M. Selby is the Acting Service Center Director of USCIS's Vermont Service Center. She is responsible for all aspects of the operation of the Vermont Service Center, including overseeing the adjudication of Plaintiffs' petition for U nonimmigrant status, and is sued in her official capacity

16. Defendant United States Immigration and Customs Enforcement is the agency responsible with executing removal orders in the United States. ICE is an "agency" within the meaning of 5 U.S.C. § 551(1).

## LEGAL FRAMEWORK

***The U Visa Program***

17. On October 28, 2000, Congress created a new nonimmigrant visa classification, referred to as a U visa, through the passage of the Victims of Trafficking and Violence Protection Act 2000 (VTVPA). *See* Pub. L. No. 106-386, § 1513(a)(2)(B), 114 Stat. 1464, 1533 (codified at 8 U.S.C. § 1101(a)(15)(U)). The nonimmigrant U visa allows undocumented noncitizens who were victims of qualifying crimes and who assisted in the detection, investigation, or prosecution of the qualifying criminal activity to apply for and receive a nonimmigrant visa. 8 U.S.C. § 1101(a)(15)(U); *see also* 8 C.F.R. § 214.14(a)(5). Upon issuance, the U visa provides noncitizens with up to four years of nonimmigrant status and work authorization. *See* 8 U.S.C. § 1184(p)(6). Additionally, by operation of law, the approval of a U visa cancels any final order of removal to which the petitioner may be subject. 8 C.F.R. § 214.14(c)(5)(i). Moreover, upon residing in the United States in U nonimmigrant status continuously for three years, noncitizens may apply for permanent residency. *See* 8 U.S.C. § 1255(m).

18. In creating the U visa program, Congress sought to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute" certain serious crimes "while offering protection to victims of such offenses in keeping with the humanitarian interests of the United States." *See* VTVPA, Pub. L. No. 106-386, Title V, § 1513(a), 114 Stat. 1464, 1533. By providing victims of crime with an avenue for gaining lawful immigration status, the U visa encourages victims to cooperate with law enforcement agencies, thus strengthening relations between law enforcement and immigrant communities.

19. Individuals are eligible for U nonimmigrant status if they: (1) are the victim of qualifying criminal activity that occurred in the United States or its territories or possessions; (2) have suffered substantial physical or mental abuse as a result; and (3) have been helpful to law enforcement in the

detection, investigation, or prosecution of such criminal activity. See 8 U.S.C. § 1101(a)(15)(U). As relevant here, a felonious assault is a qualifying crime for a U visa. 8 U.S.C. § 1101(a)(15)(U)(iii). Armed robbery satisfies the definition of an assault; moreover, it is a third degree felony under 76-5-103 of the Utah Criminal Code. Consequently, armed robbery under Utah law is a felonious assault. In addition, armed robbery independently qualifies as a "qualifying criminal activity" under the U-visa statute and its implementing regulations, which expressly include robbery and related violent offenses. *See* 8 U.S.C. § 1101(a)(15)(U)(iii); 8 C.F.R. § 214.14(a)(9).

20. A U visa applicant also must be admissible to the United States. 8 C.F.R. § 214.14(c)(2)(iv). If an applicant is not admissible, he is eligible for a waiver of the grounds that render him inadmissible by filing Form I-192 with supporting documentation with his U visa petition. 8 C.F.R. § 212.17(a).

21. To apply for a U visa, a petitioner must file with USCIS a Form I-918, Petition for U Nonimmigrant Status; Form I-918, Supplement B, a certification from a recognized law enforcement official confirming that the noncitizen has cooperated in the investigation or prosecution of the criminal activity; and a signed statement by the petitioner describing the facts of the victimization. The petitioner may submit additional, supporting evidence. The principal U visa petitioner may request that a qualifying family member, such as the petitioner's spouse, be included as a derivative applicant by filing a Form I-918, Supplement A.

22. All U visa petitioners who reside in the State of Utah must submit their petition and all supporting documents to USCIS Vermont Service Center, which has exclusive jurisdiction over petitions for U nonimmigrant status filed by residents of Utah.

***The Waiting List for U Visa Status***

23. By statute, USCIS may not grant more than 10,000 principal U visas in any given fiscal year. *See* 8 U.S.C. § 1184(p)(2)(A). The statutory cap only applies to principal applicants, not to

derivative applicants. 8 U.S.C. § 1184(p)(2)(B). This cap has been reached every year since 2010. As of the first quarter of Fiscal Year 2025, USCIS reported that 246,137 principal petitions for U nonimmigrant status remained pending nationwide. U.S. Citizenship & Immigr. Servs., *Form I-918, Petition for U Nonimmigrant Status: Fiscal Year 2025, Quarter 1* (2025).

24. Defendants continue to receive, process, and review U visa petitions despite having reached the statutory cap on grants of U visas. USCIS must place petitioners who otherwise would receive such status but for the statutory cap on a U visa waiting list. *See* 8 C.F.R. § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted [principal U] nonimmigrant status must be placed on a waiting list and receive written notice of such placement.") (emphasis added).

25. Petitioners and their qualifying family members whom USCIS places on the U visa waiting list are granted temporary protection from removal while their petitions are pending, in the form of either deferred action if they are in the United States or parole if they are outside of the United States. 8 C.F.R. § 214.14(d)(2). Individuals placed on the wait list also may be granted employment authorization. 8 C.F.R. § 214.14(d)(2).

26. USCIS implemented the U visa waiting list regulations with the stated goals of "assisting law enforcement . . . ; improving customer service by allowing victims to remain in the United States, giving them an opportunity to access victim services to which they may be entitled; and providing [employment authorization documents] to . . . victims so they will have a lawful means through which to support themselves and their families." New Classification for Victims of Criminal Activity; Eligibility for "U" Nonimmigrant Status; Interim Rule, 72 Fed. Reg. 53014, 53033 (Sept. 17, 2007); see also id. at 53027 (indicating that it was creating the waiting list process "to balance the statutorily imposed numerical cap against the dual goals of enhancing law enforcement's ability to investigate and prosecute criminal activity and providing protection to [noncitizen] victims of crime"); *id.* ("USCIS

believes that this rule's waiting list methodology will provide a stable mechanism through which victims cooperating with law enforcement agencies can regularize their immigration status.").

27. USCIS has a large backlog of pending U visa petitions for which it has not made the determination of whether to place the petitioner on the waiting list. USCIS publishes a "priority date" that reflects the submission date of petitions that it is currently processing for the waiting list.

***Eligibility for Employment Authorization for U Visa Applicants***

28. Defendants automatically grant employment authorization to petitioners who receive U nonimmigrant status. 8 U.S.C. § 1184(p)(3)(B); 8 C.F.R. § 214.14(c)(7). Additionally, USCIS may grant work authorization to those on the waiting list. 8 C.F.R. § 214.14(d)(2). To be eligible for this latter work authorization, the U visa petitioner must file an application for an employment authorization document on Form I-765 with his U visa petition packet.

***Reasonableness of a Delay***

29. Courts assessing whether agency delay is unreasonable under the Administrative Procedure Act do not evaluate the passage of time in isolation, but instead examine the surrounding factual context and the real-world consequences of the delay. *Telecomms. Rsch. & Action Ctr. v. FCC* ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984) (must be governed by a "rule of reason"). The TRAC factors make clear that "reasonableness" is not a mechanical calculation of months or years, but a contextual inquiry that turns on the nature of the interests at stake, the extent of prejudice caused by the delay, and whether human health or welfare is implicated. *Id.* at 80. The Tenth Circuit has likewise recognized that administrative reasonableness must be assessed in light of the totality of circumstances and the practical harms imposed on affected parties rather than through rigid temporal benchmarks. *See*, e.g., *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190–91 (10th Cir. 1999) (holding that statutory duties must be enforced where agency delay frustrates congressional purpose); *Qwest Commc'ns Int'l, Inc. v. FCC*,

398 F.3d 1222, 1238–39 (10th Cir. 2005) (noting that administrative reasonableness depends on context and statutory objectives).

30. Under these principles, reasonableness does not exist in a vacuum. Agency delay becomes legally untenable where the surrounding circumstances transform inaction into a source of concrete and escalating harm. *See TRAC*, 750 F.2d at 80; *Yu v. Brown*, 36 F. Supp. 2d 922, 931–32 (D.N.M. 1999) (finding immigration delay unreasonable where it caused significant personal and economic hardship).

31. Here, DHS's failure through USCIS to adjudicate Plaintiffs' pending Form I-918 petition and issue a bona fide determination, while DHS, through ICE, simultaneously insists on Plaintiffs' imminent departure from the United States, renders the delay categorically unreasonable under the TRAC framework. *See TRAC*, 750 F.2d at 80. This is not a case of passive backlog alone; it is a case in which one component of DHS withholds adjudication while another component affirmatively accelerates removal, thereby magnifying prejudice and undermining the very statutory protections Congress created. Such internally contradictory conduct frustrates congressional intent and weighs heavily against any finding of administrative reasonableness. *See Forest Guardians*, 174 F.3d at 1190 (agency delay that defeats statutory purpose warrants judicial intervention).

32. The prejudice is further compounded by the direct impact on Plaintiffs' three United States-citizen children, whose interests in family unity, stability, and economic security are substantial and entitled to meaningful weight in the reasonableness analysis. Courts have repeatedly recognized that immigration delay affecting family unity and child welfare implicates precisely the types of human interests that TRAC instructs courts to prioritize.

33. In light of these surrounding circumstances, prolonged failure to adjudicate, simultaneous efforts to deport, the deprivation of congressionally authorized interim protections, and the substantial

and ongoing harm to three U.S.-citizen children, the delay at issue is not merely lengthy but legally unreasonable within the meaning of 5 U.S.C. §§ 555(b) and 706(1). The APA's command that agencies proceed "within a reasonable time" cannot be satisfied where the government's own internal actions compound delay into active prejudice and place family unity and child welfare at immediate risk.

## PROCEDURAL AND FACTUAL BACKGROUND

34. Plaintiff Branht Dionicio Aguilera Rodriguez is a native and citizen of Honduras who currently resides at 668 Wasatch Drive, Layton, Utah with his wife and children. Ex. 2. Mr. Aguilera is married to Digna Suyapa Gutierrez Ordonez, and together they are the parents of four minor children, three of which are United States citizens. Ex. 2. Plaintiff BAAG, Mr. Aguilera's minor son, is also included in the pending Form I-918 petition as a derivative beneficiary and is a Plaintiff in this action. Mr. Aguilera is the principal petitioner on a pending Form I-918, Petition for U Nonimmigrant Status, currently before USCIS. Ex. 1; Ex. 2. Despite the pendency of that petition, Defendants have failed to meaningfully adjudicate his application while immigration enforcement actions continue to threaten his ability to remain with his family in the United States.

35. Mr. Aguilera is the victim of qualifying criminal activity that occurred within the United States and was reported to and investigated by local law-enforcement authorities. Ex. 2. The criminal conduct involved a robbery directed at Mr. Aguilera and constitutes qualifying criminal activity under the Immigration and Nationality Act and its implementing regulations. Ex. 2. Official police documentation and investigative records were generated in connection with these incidents and were submitted with his U-visa petition. Ex. 2.

36. During the robberies, Mr. Aguilera was placed in fear for his personal safety and experienced significant emotional distress. Ex. 2. The incidents were sudden and violent in nature, leaving him with ongoing anxiety, hyper-vigilance, and fear of being followed or attacked. Ex. 2.

Following the criminal acts, Mr. Aguilera cooperated with law enforcement by providing detailed statements, answering investigative questions truthfully, and remaining available for follow-up as requested. Ex. 2. Law-enforcement authorities ultimately certified his helpfulness by executing a Form I-918, Supplement B, confirming that he was a victim of qualifying criminal activity and that he has been helpful, is being helpful, or is likely to be helpful in the investigation or prosecution of the offenses. Ex. 3.

37. As a direct consequence of these crimes, Mr. Aguilera has suffered substantial mental and emotional harm. Ex. 2. He experiences difficulty concentrating, persistent fear, distrust of others, irritability, and ongoing psychological distress that interferes with his ability to work and function normally. Ex. 2. These effects are corroborated by the psychological evaluation and supporting documentation included in his U-visa submission, which detail the continuing emotional impact of the victimization on his daily life and stability. Ex. 2.

38. The impact of the crimes extends beyond Mr. Aguilera individually and has significantly affected his immediate family. Ex. 2. Mr. Aguilera and his spouse are the parents of four young children who rely upon him for financial support, emotional stability, and day-to-day caregiving. Ex. 2. The instability caused by the crimes and the prolonged uncertainty surrounding his immigration status have created ongoing stress within the household and heightened the vulnerability of the family unit. Ex. 2.

39. Mr. Aguilera and his wife previously served as police officers in Honduras. Ex. 2. Because of their law-enforcement affiliation, particularly Mrs. Gutierrez's involvement in anti-drug enforcement, they were subjected to threats and persecution in their home country, which ultimately compelled them to flee Honduras and seek safety in the United States. Ex. 2. Their background in law enforcement and the risks associated with it form part of the broader context of their vulnerability and the seriousness of the harm they have endured.

40. Mr. Aguilera submitted a complete Form I-918 petition packet to USCIS, including the executed Form I-918, Supplement B, sworn personal statements, police reports, identification documents, marriage records, birth certificates for his children, and corroborating psychological documentation. Ex. 1; Ex. 2; Ex. 3. His spouse and minor son BAAG were included as derivative beneficiaries, and all required biographical and supporting documentation was provided. Ex. 2. USCIS accepted the filing and issued receipt notices confirming that the petition was properly submitted and remains pending. Ex. 1.

41. At all relevant times, Mr. Aguilera has complied with all agency instructions, appeared for required biometrics, and timely responded to all requests for evidence and recertifications. Ex. 3. There are no outstanding deficiencies in his submission preventing adjudication. Ex. 3. Nevertheless, despite the completeness of the application and the certification of law-enforcement helpfulness, USCIS has failed to issue a bona fide determination or otherwise take meaningful adjudicative action, leaving Mr. Aguilera, his minor son who is also a Plaintiff, and his family in prolonged uncertainty and exposing them to continued hardship and instability. Ex. 1; Ex. 3.

## REASONABLENESS FACTORS

### I. The Delay Is Unreasonable Under Both the TRAC Framework and the Tenth Circuit's Qwest Reasonableness Factors

42. Plaintiffs seek relief under 5 U.S.C. §§ 555(b) and 706(1), which require agencies to conclude matters presented to them "within a reasonable time" and authorize courts to compel agency action unlawfully withheld or unreasonably delayed. Where Congress has not imposed a specific statutory deadline, courts evaluate reasonableness through a contextual, multi-factor inquiry. Two complementary lines of authority govern that inquiry here: (1) the six-factor framework articulated in *Telecommunications Research & Action Center v. FCC* ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984); and (2) the Tenth Circuit's contextual reasonableness analysis reflected in *Qwest Commc'ns*

*Int'l, Inc. v. FCC*, 398 F.3d 1222, 1238–39 (10th Cir. 2005). Together, these authorities confirm that Defendants' prolonged inaction—especially when coupled with ICE's simultaneous insistence on Plaintiffs' imminent departure—constitutes unreasonable delay as a matter of law.

**II. The TRAC Factors Weigh Decisively in Plaintiffs' Favor**

**1. The "Rule of Reason."**

43. The "first and most important factor" is that the time an agency takes to act must be governed by a "rule of reason." *TRAC*, 750 F.2d at 80. A rule of reason cannot exist where one component of the same parent agency withholds threshold adjudication of a pending benefit application while another component accelerates removal in a matter of days. Here, USCIS's failure to issue a bona fide determination—or otherwise take meaningful adjudicative action—operates in direct tension with ICE's demand that Plaintiffs self-fund their departure within a week. This internal contradiction defeats any claim that agency timing is governed by a coherent or rational principle.

**2. Statutory Scheme and Purpose.**

44. Where Congress has not supplied a fixed deadline, the statutory scheme nonetheless "may supply content for this rule of reason." *Id.* The U-visa framework is expressly designed to encourage victim cooperation by providing interim protections while petitions are pending. USCIS's own policy recognizes that bona fide determinations are intended to occur early to afford qualifying victims temporary protection and stability. *U Visa and Bona Fide Determination Process — Frequently Asked Questions*, USCIS (Oct. 29, 2022) ("The bona fide determination process was created with the goal of conducting initial reviews of U nonimmigrant status petitions more efficiently and providing eligible victims of qualifying crimes with employment authorization and deferred action while they await a final adjudication of their petition for U nonimmigrant status under the annual statutory cap. This will provide victims with stability and better equip them to cooperate with and assist law enforcement.").

Allowing removal to proceed before that threshold review occurs frustrates the very statutory purpose Congress enacted.

**3. Human Health and Welfare.**

45. "Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *TRAC*, 750 F.2d at 80. Plaintiffs face imminent family separation, loss of stability, and the risk that removal will moot the pending petition entirely. The welfare of minor children—three of whom are United States citizens—is directly implicated. Under TRAC, such circumstances sharply diminish any tolerance for delay.

**4. Effect on Competing Agency Priorities.**

46. The fourth factor considers the effect of expediting action on higher or competing priorities. *Id.* Compelling a discrete threshold determination here does not reorder the agency's entire docket; it requires only the performance of a specific, early-stage adjudicative step. Moreover, DHS's invocation of resource constraints rings hollow where the agency is simultaneously devoting resources to effectuate removal on an emergency timeline. The relief sought aligns with, rather than disrupts, the agency's stated adjudicative framework.

**5. Nature and Extent of Prejudice.**

47. Courts must evaluate "the nature and extent of the interests prejudiced by delay." *Id.* Plaintiffs' prejudice is acute and concrete: imminent deportation before adjudication, loss of interim protection, economic and emotional instability, and substantial harm to minor children's welfare and family unity. The prejudice is magnified because DHS's own components are working at cross-purposes, ensuring that continued delay has irreversible consequences.

**6. No Showing of Bad Faith Required.**

48. TRAC makes clear that plaintiffs need not demonstrate impropriety or bad faith to prevail. *Id.* Even absent malicious intent, objectively unreasonable delay—measured against its real-world consequences—warrants judicial intervention.

**III. The Tenth Circuit's Qwest Reasonableness Factors Confirm the Delay Is Unlawful**

49. Independent of TRAC, the Tenth Circuit has emphasized that administrative reasonableness is inherently contextual and must be evaluated in light of statutory objectives, reliance interests, and the practical consequences of agency action. *Qwest Commc'ns Int'l, Inc. v. FCC*, 398 F.3d 1222, 1238–39 (10th Cir. 2005). Although *Qwest* arose in a regulatory context, its core principle applies with equal force here: reasonableness cannot be divorced from surrounding circumstances or from the agency's own policy commitments.

**1. Context and Statutory Purpose.**

50. *Qwest* underscores that agencies must act consistently with the purposes and expectations embedded in the governing statutory framework. Here, USCIS's prolonged inaction undermines Congress's intent to protect cooperating victims and DHS's own policy of early bona fide review.

**2. Reliance and Practical Consequences.**

51. The Tenth Circuit recognizes that administrative timing and decision-making must account for reliance interests and real-world effects. Plaintiffs have structured their lives, employment, and family stability around the pending petition and the protections it is designed to afford. ICE's insistence on immediate departure transforms administrative delay into a source of concrete, escalating harm.

**3. Consistency and Rational Administration.**

52. *Qwest* further reflects the principle that agencies must administer their responsibilities coherently and rationally. DHS's internal inconsistency—USCIS withholding adjudication while ICE

presses removal—illustrates the very type of irrational administrative posture that the Tenth Circuit has cautioned against. Reasonableness does not exist in a vacuum; it is shaped by the agency's surrounding conduct and the foreseeability of harm.

**IV. Combined Analysis**

53. Under TRAC, the delay fails every factor: it lacks a rule of reason, contravenes statutory purpose, implicates human welfare, imposes minimal burden if expedited, inflicts severe prejudice, and requires no showing of bad faith. Under Qwest, the delay is equally untenable because it ignores statutory objectives, disregards reliance interests, and produces irrational, internally inconsistent outcomes. When USCIS's failure to adjudicate is considered together with ICE's efforts to compel imminent departure—and when the welfare of minor children is weighed alongside Congress's victim-protection mandate—the only legally supportable conclusion is that the delay is unreasonable within the meaning of 5 U.S.C. §§ 555(b) and 706(1). Judicial intervention is therefore warranted to compel the agency to perform the discrete adjudicative action Plaintiffs are entitled to receive.

## CAUSES OF ACTION

### 1. FIRST CAUSE OF ACTION: The Administrative Procedure Act, 5 U.S.C. §§ 555(b), 706(1)

54. Plaintiffs incorporate and reallege the allegations above.

55. The Administrative Procedure Act, 5 U.S.C. § 555(b), requires administrative agencies to act upon matters presented to them "with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." The APA further provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1) (emphasis added).

56. Defendants have a nondiscretionary obligation to determine Plaintiffs' eligibility for placement on the U visa waiting list within a reasonable time.[1] *See* 8 C.F.R. § 214.14(d). Once Defendants determine that Plaintiffs are eligible for the U visa waiting list, Defendants have a nondiscretionary duty to place them on the waiting list and grant them deferred action or parole. *Id.*

57. Plaintiffs have a clear right under the Immigration and Nationality Act and implementing regulations to have Mr. Aguilera's U visa petition adjudicated within a reasonable time. They have suffered a "legal wrong" and are persons aggrieved by the agency under the APA because Defendants have failed to adjudicate his eligibility for the U visa waiting list.

58. Mrs. Gutierrez and BAAG's eligibility for derivative U visa status, deferred action, and employment authorization is entirely dependent on the adjudication of Mr. Aguilera's petition, and Defendants' delay therefore causes her independent and ongoing injury.

59. Under the TRAC and Qwest factors, Defendants' delay is unreasonable where Congress has expressed an intent for prompt victim protection, Plaintiffs' interests involve human health and welfare, and no competing agency priorities justify the delay. *Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).

60. By failing to adjudicate Plaintiffs' eligibility for the U visa waiting list for twelve months, Defendants have "unlawfully withheld or unreasonably delayed" the adjudicative and administrative functions delegated to them by law in violation of 5 U.S.C. § 706(1).

**2. SECOND CAUSE OF ACTION:**
**The Mandamus Act, 28 U.S.C. § 1361**

61. Plaintiffs incorporate and reallege the allegations above.

---

[1] Issuance of a bona fide determination is the required threshold step necessary for Defendants to determine eligibility for placement on the U visa waiting list and to grant the interim protections mandated by regulation. *See* U.S. Citizenship & Immigration Servs., *I-918, Petition for U Nonimmigrant Status* (explaining implementation of bona fide determination process as initial review step for pending petitions), and U.S. Citizenship & Immigration Servs., *Policy Manual*, Vol. 3, Part C, Chapters 5–6 (describing sequence of bona fide determination before waiting list consideration).

62. Defendants have a mandatory duty to place all eligible petitioners for U nonimmigrant status on the waiting list. *See* 8 C.F.R. § 214.14(d); INS v. St. Cyr, 533 U.S. 289, 307–08 (2001) ("Eligibility that was governed by specific statutory standards provided a right to a ruling on an applicant's eligibility, even though the actual granting of relief was not a matter of right under any circumstances, but rather is in all cases a matter of grace.") (internal quotation marks and citation omitted).

63. Once Plaintiffs submitted their complete and bona fide Form I-918, Form I-918, Supplement A, and Form I-918, Supplement B and victim statement, they had a clear right, under 8 C.F.R. § 214.14(d)(2), to a determination of eligibility for the waiting list, and a clear right to that determination within a reasonable period of time. 5 U.S.C. § 555(b).

64. In contravention of their own regulation, Defendants have failed to place Plaintiffs on the waiting list. Despite the lapse of a year, Defendants have yet to adjudicate Plaintiffs' U visa petition.

65. Plaintiffs have no adequate remedy at law to redress this delay.

66. Plaintiffs are entitled to relief in the nature of mandamus pursuant to 28 U.S.C. § 1361 to compel Defendants to timely determine their eligibility for placement on the U visa waiting list.

## **RESERVATION OF RIGHTS**

Plaintiffs reserve the right to add additional allegations of agency error and related causes of action upon receiving the certified administrative record.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court grant the following relief:

A. Assume jurisdiction over this action;

B. Order Defendants to comply with their duties under 8 C.F.R. § 214.14(d)(2) and place Plaintiffs' on the U visa waiting list;

C. Order Defendants to adjudicate Plaintiffs' Form I-918 petition and issue a bona fide determination within a time certain.

D. Enjoin Defendants, including United States Immigration and Customs Enforcement, from executing Plaintiffs removal order while this action is pending.

E. Award reasonable costs and attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. §2412, and other applicable law; and

F. Grant such other and further relief as the Court deems just and proper.

DATED: January 30, 2026

Respectfully submitted,

/S/ ALEC S. BRACKEN
Alec S. Bracken (UT SBN 17178)
Contigo Law
P.O. Box 249
Midvale, UT 84047
Tel. (801) 980-9430
Email: alec@contigo.law